Filed 8/7/26  P. v. Turner CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br>        Plaintiff and Respondent,<br>v.<br><br>BYRON TURNER,<br>        Defendant and Appellant. | A172384<br><br>(Contra Costa County Super.<br>Ct. No. 04-22-01210) |

Byron Turner appeals from a conviction for carrying a loaded handgun. He contends the trial court erroneously denied his motion to suppress evidence of the firearm — which was obtained after a warrantless search of his car — arguing that no exception to the warrant requirement justified the search.  We agree and reverse.

## BACKGROUND

One evening in June 2022, an officer and his partner were on patrol in Pittsburg near a gas station, which was located on a street corridor known to be a gang hangout and high crime area.  The officer had investigated shootings, violent crimes, drug possession, and weapons violations in the area.  At the gas station, he noticed Turner, then 23 years old, wearing a crossbody bag — approximately the size of a fanny pack — against his torso while standing next to his car parked at the gas pump.  In the officer's training and experience, people were "notoriously known" to conceal weapons

1

in such bags.  But he acknowledged the bag had other uses and did not itself necessarily carry indicia of criminality.  Nonetheless, he believed there was something in the bag and decided to investigate Turner.  When Turner drove away, the officer gave pursuit to conduct a traffic enforcement stop; the car had tinted driver and passenger windows and was missing its front license plate — both violations of the Vehicle Code.  (Veh. Code, §§ 26708.5, subd. (a), 5200, subd. (a).)

The officer activated his overhead lights and chirped his siren to maneuver past two additional cars — it was a "busy time of day," and there were "a lot of cars passing by."  It took Turner 12 seconds after the siren chirped to turn on his right turn signal and pull to the side of the freeway on-ramp.  The officer described this as a "prolonged time" to pull over and believed Turner was concealing items inside the car.  After stopping, the officer approached the driver's side window and noticed Turner was no longer wearing the crossbody bag; it was now on the rear passenger seat within arm's reach of the driver.  He told Turner he'd been stopped for his tinted windows and missing license plate.  At the officer's request, Turner provided an insurance card and retrieved his driver's license from a wallet in his pocket rather than the crossbody bag, which "stood out" to the officer.  The officer smelled both fresh and burnt cannabis coming from the vehicle but did not believe Turner was under the influence of marijuana.  In the center console were "doobies" — ends of a cigar containing cannabis — and on the passenger seat a rolling tray, tobacco cigars, rolling papers and a pair of scissors.

Based upon what he saw, the officer grew concerned about unlawful possession and an open container of cannabis; no open container was ever found.  He asked Turner, "do you have an issue with me searchin' your car?"

2

Turner said, "No, I don't want you searchin' my car." When the officer asked why, Turner responded, "I didn't do anything wrong. [Y]ou pulled me over for window tint, now you asking me to search my car?" The officer replied, "[T]he reason why I'm askin' 'cause the smell of weed in the car." Turner denied the presence of cannabis, at which point the officer returned to his vehicle, consulted with his partner — who noted Turner took his wallet out of his pocket and questioned what was in the crossbody bag — and returned to Turner's car.

The officer directed Turner to "step out the car" to discuss "a few things"; he later testified he felt unsafe because he believed there was a gun inside the car. Turner refused. Instead, he phoned his father, explained he had been pulled over and asked to step out of the car "for no reason," and expressed worry that "they gonna try to do something." To the officer, making a call indicated that Turner was nervous and trying to distract him from searching the vehicle. It also heightened his suspicion that there was contraband inside. But Turner remained cooperative and made no sudden movements.

The officer returned to his car where he simultaneously began writing a traffic citation and requested a K-9 unit to detect ammunition and explosives. Additional officers arrived, but the officer told them the situation was "good" and he was just waiting for the K-9 unit; he did not tell them he felt unsafe. He stopped writing the citation as soon as the K-9 unit arrived. The officer asked Turner a few more times to exit the car, but Turner refused. He ultimately exited after the officer advised him he otherwise could be arrested for delaying, resisting, or obstructing an investigation. Before Turner got out of the car, the officer expressly told him that he was not under arrest.

3

Turner was not handcuffed, and a pat search revealed nothing. The officer led Turner behind the patrol car, where he was surrounded by three other officers. The police dog did a perimeter sniff of the vehicle but did not alert. The officer conducted a vehicle frisk — search of the passenger compartment of the car within arm's reach of the driver — because Turner was outside the car and unhandcuffed so, according to the officer, he could potentially access the car before the investigation was complete. The officer's partner assisted in the search, picked up the crossbody bag, and immediately stated there was a firearm in the bag. A search revealed a semiautomatic Glock handgun inside. Turner was immediately arrested.

The Contra Costa County District Attorney charged Turner with carrying a loaded handgun (Pen. Code, § 25850, subd. (a); subsequent statutory references are to this code), receiving a large-capacity magazine (§ 32310, subd. (a)), and having a concealed firearm in a vehicle (§ 25400, subd. (a)(1)). Turner moved to suppress the evidence of the firearm obtained after the search of his car. After a hearing at which the officer testified to the above facts, the trial court denied the motion. It found that the officer credibly testified to his belief that the crossbody bag contained a firearm when he saw Turner at the gas station, but he did not have sufficient articulable facts to seize it at that time. It also noted that, once the officer saw the "open container of marijuana," he pursued other investigations. Probable cause to arrest Turner arose once he refused to exit his vehicle. Thus, the officer was entitled to search the car for his safety — areas that Turner could reach — as a search incident to arrest.

Pursuant to a negotiated deal, Turner pled no contest to carrying a loaded handgun and agreed to two years of probation. The district attorney dismissed the remaining charges.

4

## DISCUSSION

" 'The Fourth Amendment to the federal Constitution prohibits *unreasonable* searches and seizures.' " (*People v. Macabeo* (2016) 1 Cal.5th 1206, 1212.) Generally, law enforcement officers must "obtain a warrant before conducting a search." (*People v. Lopez* (2019) 8 Cal.5th 353, 359.) A warrantless search or seizure is presumptively unreasonable unless it falls within a specific judicially recognized exception. (*Macabeo*, at p. 1213; *People v. Williams* (1999) 20 Cal.4th 119, 125.) Evidence obtained in violation of the Fourth Amendment is generally prohibited from being used in criminal trials. (*People v. Marquez* (2019) 31 Cal.App.5th 402, 411.)

Turner contends the trial court erred by denying his suppression motion because no recognized exception to the warrant requirement justified the search of his car. (*People v. Lopez*, *supra*, 8 Cal.5th at p. 359.) Defendants may move "to suppress as evidence any tangible or intangible thing obtained as a result" of a warrantless, unreasonable search or seizure. (§ 1538.5, subd. (a)(1)(A).) The prosecution bears the burden of establishing an exception applies. (*People v. Gale* (1973) 9 Cal.3d 788, 795.) When reviewing the denial of a suppression motion, we defer to the trial court's factual findings if supported by substantial evidence — evidence that is reasonable, credible, and of solid value — but exercise our independent judgment to determine whether the search or seizure was reasonable under the Fourth Amendment. (*People v. Macabeo*, *supra*, 1 Cal.5th at p. 1212; *People v. Ayon* (2022) 80 Cal.App.5th 926, 937.) Having engaged in that review, we conclude none of the People's proffered exceptions to the warrant requirement apply here.

First, the People argue the officer properly searched his car as a protective sweep — a "quick and limited" preventative search of a vehicle for

5

weapons during a roadside encounter "to protect the safety of police officers or others." (*Maryland v. Buie* (1990) 494 U.S. 325, 327; *Michigan v. Long* (1983) 463 U.S. 1032, 1049.)  We disagree.

Searching "the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden" is permissible, but the officer must possess a "reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' " the officer's belief that "the suspect is dangerous and the suspect may gain immediate control of weapons." (*Michigan v. Long*, *supra*, 463 U.S. at p. 1049.)  The " 'issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.' " (*Id*. at p. 1050.)  In "determining whether the officer acted reasonably in such circumstances, due weight" is given to "specific reasonable inferences" the officer "is entitled to draw from the facts in light of his experience." (*Terry v. Ohio* (1968) 392 U.S. 1, 27, 30–31.)

The circumstances here, however, demonstrate the officer improperly acted on his "inchoate and unparticularized suspicion or 'hunch' " to search the car.  (*Terry v. Ohio*, *supra*, 392 U.S. at p. 27.)  Upon observing Turner, the officer immediately suspected he was carrying a firearm simply because he was getting gas at a gas station in a high crime area known for gang activity and wearing a crossbody bag "notoriously known" for carrying weapons.[1]  But he conceded that the bag itself did not carry any indicia of criminality.  He

---

[1] While the officer testified crossbody bags were used to conceal weapons, he did not testify that they were used to conceal *firearms*.  The trial court's finding that, in the officer's experience, crossbody bags were commonly used for "carrying a weapon, a handgun specifically," is not supported by the evidence.  (*People v. Glaser* (1995) 11 Cal.4th 354, 362 [deferring to magistrate factual findings only if supported by substantial evidence].)

also failed to identify facts suggesting that Turner's bag *specifically* may have contained a firearm.  His belief that Turner was thus armed and dangerous based primarily upon his carrying a crossbody bag was purely speculative. (*People v. Pantoja* (2022) 77 Cal.App.5th 483, 490 [officer's testimony that defendant was armed and dangerous because he wore baggy clothing that could conceal a weapon even though it naturally had bulges was speculative and lacking in specific, articulable facts].)

That the gas station was in a high crime area "does not elevate" the carrying of a crossbody bag "into a reasonable suspicion of criminality," as the People contend.  (*People v. Bower* (1979) 24 Cal.3d 638, 645.)  "Many citizens of this state are forced to live in areas that have 'high crime' rates or they come to these areas to shop, work, play, transact business, or visit relatives or friends." (*Ibid*.)  Courts are reluctant "to conclude that a location's crime rate transforms otherwise innocent-appearing circumstances into circumstances justifying the seizure of an individual." (*Ibid*.; *In re Tony C.* (1978) 21 Cal.3d 888, 897 [high crime area "justification is so easily subject to abuse that this fact alone should not be deemed sufficient to support the intrusion"], superseded by constitutional amendment on another point in *In re Christopher B.* (1990) 219 Cal.App.3d 455, 460, fn. 2.)  Indeed, there was no testimony regarding any reason to believe Turner was in a gang.  (*King v. State of California* (2015) 242 Cal.App.4th 265, 286.)  In fact, the officer had never met Turner and had no knowledge of his history.  (*People v. Bush* (2001) 88 Cal.App.4th 1048, 1052 [knowledge of person's history of violence and possession of weapons provided reasonable suspicion suspect was armed and dangerous].)  Turner's presence in that area, standing alone, did not support a reasonable suspicion that he was armed and dangerous.  (*People v. Perrusquia* (2007) 150 Cal.App.4th 228, 233.)  Even the trial court

acknowledged there were no "sufficient articulable facts" at that point to search the bag.

Subsequent information gathered by the officer, even when viewed under the totality of the circumstances, also fails to support a reasonable suspicion that Turner was armed and dangerous and could "gain immediate control of a weapon" so as to justify a protective sweep of the car. (*People v. Miranda* (1993) 17 Cal.App.4th 917, 927.) The officer stopped Turner for a missing front license plate and tinted windows — "minor traffic offenses [that] do not reasonably suggest the presence of weapons." (*Ibid.*) We also fail to see how Turner taking 12 seconds to pull over after the officer chirped his siren gives rise to a specific, reasonable inference he was engaging in criminal activity, particularly when the officer admitted there were many cars driving by. (*Michigan v. Long*, *supra*, 463 U.S. at pp. 1049–1050.) The officer testified that he chirped his siren to attract both Turner's attention *and* the other cars that the officer was passing. By his own admission, the 12-second "prolonged time period[]" reflected the time it took for the officer to maneuver past at least two other vehicles and for Turner to pull over. The record does not support the finding that this yield time was objectively suspicious.

Next, that Turner retrieved his wallet from his pocket rather than from his crossbody bag, which was in the back seat of the car when he was stopped, does not support a reasonable suspicion that he was armed. There were no weapons or firearms in plain view in Turner's car. (Compare with *People v. Lafitte* (1989) 211 Cal.App.3d 1429, 1430–1431 [sweep of car for weapons before allowing defendant back in the car justified where officers viewed a knife in the passenger compartment].) The officer also did not

8

testify that Turner's retrieval of his wallet from his pocket was indicative of criminal activity, nor does the record reflect any testimony that Turner made furtive movements towards the bag. (*People v. Pantoja*, *supra*, 77 Cal.App.5th at p. 490.) Rather, the officer simply testified that Turner keeping his wallet in his pocket "stood out." This falls short of an articulable fact that would lead a reasonable person to suspect the bag contained something presenting a danger to the officer's safety.[2] (*Terry v. Ohio*, *supra*, 392 U.S. at p. 27.)

Nor does Turner's nervousness — demonstrated by, in the officer's opinion, Turner phoning his father and explaining that police were asking to search his car — or refusal to consent to the search support a suspicion that he was armed and dangerous, as the People contend. At the outset, a " 'refusal to consent to a search cannot itself form the basis for reasonable suspicion.' " (*In re H.H.* (2009) 174 Cal.App.4th 653, 658.) If " 'refusal of consent were a basis for reasonable suspicion, nothing would be left of Fourth Amendment protections.' " (*Ibid.*) Moreover, there is a " 'danger in considering "nervous" and "evasive" behavior in the totality of the circumstances analysis when devoid of real world context.' " (*Sellers v. Superior Court* (2026) 19 Cal.5th 75, 90.) Drivers will exhibit signs of

---

[2] The presence of burnt ends of tobacco leaves from a cigar — "doobies" — in the absence of any suspicion Turner was driving under the influence of marijuana or the officer finding an open container of cannabis also fails to support any reasonable suspicion the satchel contained a weapon. (*People v. Hall* (2020) 57 Cal.App.5th 946, 954 [lawful possession of cannabis is " 'not contraband' and lawful conduct" may "not 'constitute the basis for detention, search, or arrest' "].) Indeed, the People expressly declined to defend the magistrate's finding that the marijuana odor and "doobies" in Turner's vehicle provided the officer with probable cause to believe there was an open container of cannabis that consequently provided the officer with the authority to further investigate the car for a weapon.

nervousness based on the extended police questioning based, as here, on a traffic violation. (*People v. Loewen* (1983) 35 Cal.3d 117, 125.) There was no evidence that Turner's answers were evasive or that he exhibited any other unusual behavior. (Compare with *In re H.M.* (2008) 167 Cal.App.4th 136, 144 [dashing through heavy traffic causing cars to swerve, behavior of nervous glances, sweating profusely, appearing confused, combined with being known to officers supported reasonable suspicion].) Quite the opposite: Turner called his father to inform him that officers had pulled him over for window tint, and the officer described Turner as being cooperative and making no sudden movements. Turner's refusing a search of his vehicle — expressing reasonable confusion why such a search would be justified when he'd been told he had been pulled over due to tinted windows — and alleged nervousness illustrated by wanting to call his father, "considered singly or in combination, would [not] lead an officer to ' "reasonably believe in the possibility that a weapon may be used against him." ' " (*People v. Dickey* (1994) 21 Cal.App.4th 952, 956.)

Critically, the K-9 unit's negative sniff of Turner's vehicle undermined any reasonable suspicion the officer arguably could have had that Turner was armed and dangerous. The officer testified that the police dog he requested was specifically trained in detecting ammunition and explosives. The magistrate even noted the officer "tried to get a dog to come . . . validate some information." The dog did not. After sniffing the perimeter of Turner's vehicle, it failed to alert. Nevertheless, the officer searched the vehicle, dismissing the negative alert as unreliable since "K-9s aren't always a hundred percent." We question the officer's request of a K-9 sniff as probative of the existence of a firearm but the negative result as essentially irrelevant. All the circumstances, particularly given the negative alert, do

not support a reasonable suspicion that Turner possessed a weapon that could be used against the officer. (*People v. Dickey*, *supra*, 21 Cal.App.4th at p. 956.) Thus, the officer acted unreasonably in conducting a protective sweep of the passenger compartment of Turner's vehicle and searching the crossbody bag.

Next, the People contend the search would have been lawful as a search incident to arrest had Turner been arrested for his refusal to exit his vehicle upon the officer's request. We question the merit of this argument. The People concede "application of this exception to the warrant requirement is hypothetical because [Turner] was not actually subjected to a full custodial arrest." Officers may search a person " 'incident to a lawful custodial arrest.' " (*People v. Macabeo*, *supra*, 1 Cal.5th at p. 1213.) It " 'does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon' " the suspect. (*Ibid*.) Rather, " 'the fact of the lawful arrest' " — supported by probable cause — " 'establishes the authority to search.' " (*Ibid*.) Since a lawful " 'arrest of a suspect . . . is a reasonable intrusion,' " a " 'search incident to the arrest requires no additional justification.' " (*Ibid*.) But even assuming there was probable cause to arrest Turner for refusing orders (which we do not find), the officer expressly stated he was not placing Turner under arrest. "Once it was clear that an arrest was *not* going to take place, the justification for a search incident to arrest was no longer operative," as the People admit. (*Id*. at p. 1219.) That exception to the warrant requirement does not excuse the officer's search of Turner's car.

11

In sum, the trial court erred by denying Turner's suppression motion because the search violated the Fourth Amendment.[3]

## DISPOSITION

The judgment is reversed, and the matter is remanded. The trial court must vacate the order denying Turner's suppression motion. Proceedings regarding the plea entered by Turner should proceed in accordance with this judgment.

---

[3] In light of this conclusion, we need not address Turner's argument that the officer unduly prolonged his traffic stop to pursue an unrelated investigation, thus violating his constitutional rights. We note, however, that the officer testified the encounter lasted approximately 25 minutes, and that it would ordinarily take him 10 to 12 minutes to write a traffic citation.

_____
RODRÍGUEZ, J.


WE CONCUR:


_____
FUJISAKI, Acting P. J.


_____
PETROU, J.


A172384; *People v. Turner*